**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARTHA PERAZA and MAURA GAWIN, individually and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | **Civil Action No. 11 C 8390** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Lee** |
| **v.** | ) | |
| | ) | |
| **DOMINICK'S FINER FOODS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES'
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
SETTLEMENT AND FOR CLASS CERTIFICATION**

Attorneys for Plaintiffs:

Douglas M. Werman
Maureen A. Salas
WERMAN LAW OFFICE, P.C.
77 W. Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ..................................................................................... 2

    A.  Procedural Background ……........................................................................ 2

    B.  The Parties Thoroughly Investigated the Case............................................ 2

III.    THE PROPOSED SETTLEMENT ....................................................................... 3

    A.  The Proposed Settlement Class and Class Period………............................ 3

    B.  Payments to Class Members ....................................................................... 4

    C.  Class Representative and Opt-In Plaintiff Enhancement Payments............................ 4

    D.  Settlement Administration and Notice........................................................ 6

    E.  Attorneys' Fees and Costs .......................................................................... 7

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND
    PROVISIONALLY CERTIFY THE SETTLEMENT CLASS........................... 7

    A.  Settlement and Class Action Approval Process………............................... 7

    B.  The Criteria for Preliminary Settlement Approval Are Satisfied................ 9

        1.  Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and
           Allocation of the Settlement Payment ........................................... 10

        2.  Complexity, Length, And Expense of Further Litigation .............................. 11

        3.  There is No Opposition to the Settlement....................................... 11

        4.  Opinion of Counsel ....................................................................... 12

        5.  The Stage of the Proceedings and Discovery Completed .............................. 12

        6.  The Settlement Was the Result of Arm's Length Negotiations Without Any
           Hint of Collusion........................................................................... 13

    C.  Provisional Certification of the Settlement Class is Appropriate ............................... 13

1. The Requirement of Numerosity is Met ........................................................ 15

2. These Issues Meet the Commonality Requirements ...................................... 16

3. The Issues Meet the Typicality Requirements ............................................... 17

4. Adequacy of Representation is Satisfied  ..................................................... 18

    a. Plaintiffs' Counsel is Experienced and Qualified ................................ 18

    b. There is No Conflict of Interest Between Named Plaintiffs and the Class ............................................................................................................ 18

5. Rule 23(b)(3) is Satisfied ............................................................................. 18

D. The Parties' Proposed Notice Program ...................................................... 19

E. Scheduling Final Approval Hearings is Appropriate ................................. 21

## TABLE OF AUTHORITIES

## CASES

*Arango v. GC Services, LP, et al.*,
　　No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. June 10, 1998) ......................... 14

*Arrez v. Kelly Services, Inc.*,
　　No. 07 C 1289 (N.D. Ill. April 28, 2009)(Dkt. #158)..................................................... 20

*Barragan v. Evanger's Dog & Cat Food Co.*,
　　259 F.R.D. 330 (N.D. Ill. 2009)..................................................................................... 15

*Berenson v. Fanueil Hall Marketplace*,
　　671 F. Supp. 819 (D. Mass. 1987) ................................................................................. 13

*Berger v. Xerox Corp. Ret. Income Guar. Plan*,
　　No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819 (S.D. Ill. Jan. 22, 2004)......................... 5

*Class Plaintiffs v. City of Seattle*,
　　955 F.2d 1268 (9th Cir. 1992) ..................................................................................... 7, 9

*Cook v. McCarron*,
　　No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090 (N.D.Ill. Jan. 22, 1997) ....................... 9, 10

*Cook v. Niedert*,
　　142 F.3d 1004 (7th Cir. 1998) ........................................................................................ 5

*Cruz v. Unilock Chi., Inc.*,
　　383 Ill. App. 3d 752; 892 N.E.2d 78 (Ill. App. 2008)..................................................... 16

*De La Fuente v. Stokely-Van Camp, Inc.*,
　　713 F.2d 225 (7th Cir. 1983) ......................................................................................... 17

*Doe v. Guardian Life Ins. Co. of Am.*,
　　145 F.R.D. 466 (N.D. Ill. 1992)..................................................................................... 15

*Driver v. AppleIllinois LLC*,
　　Case No. 06 C 6149 (N.D. Ill.)(Dkt.#239)..................................................................... 20

*EEOC v. Hiram Walker & Sons, Inc.*,
　　768 F.2d 884 (7th Cir. 1985) ......................................................................................... 10

*Garcia v. Ron's Temporary Staffing*,
　　2006 CH 15361 (Chancery, Cook Cir. Ct.) ................................................................... 20

*Gaspar v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996) .................................................................. 15, 17

*Gautreaux v. Pierce*
   690 F.2d 616 (7th Cir. 1982) ............................................................................ 9

*Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*,
   212 F.R.D. 400 (E.D. Wis. 2002) ............................................................. 10, 11

*Grove v. Principal Mutual Life Ins. Co.*,
   200 F.R.D. 434 (S.D. Iowa 2001) .................................................................. 12

*Hispanics United of DuPage County v. Village of Addison, Ill.*,
   988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................ 10

*In re Mexico Money Transfer Litigation*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................ 11, 12, 13

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ..................................................................... 10, 11

*Johns v. DeLeonardis*,
   145 F.R.D. 480 (N.D. Ill. 1992) .................................................................... 19

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ......................................................................... 17

*Kernats v. Comcast,*
   Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071
   (N.D. Ill. Oct. 20, 2010) ......................................................................... *passim*

*Krueger v. New York Tel. Co.*,
   163 F.R.D. 433 (S.D.N.Y. 1995) .................................................................. 18

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
   834 F.2d 677 (7th Cir. 1987) ......................................................................... 10

*Martens v. Smith Barney, Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) .................................................................. 18

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   762 F.2d 1093 (D.C. Cir. 1985) ...................................................................... 8

*Ortegon, v. Staffing Network, Inc.*,
   2006 CH 12679 (Chancery, Cook Cir. Ct.) ................................................... 20

iv

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir.1999) ....................................................... 12

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)..................................................................... 20

*Polk v. Adecco*,
2006 CH 13405 (Chancery, Cook Cir. Ct.) ................................... 20

*Reed v. General Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ....................................................... 12

*Retired Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) ........................................................... 17

*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Ill 1986)...................................................... 19

*Rosales v. Randstad*,
No. 09 C 1706 (N.D. Ill. 2009)(Dkt.#152) ................................... 20

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ................................................ 14, 17

*Ross v. RBS Citizens, N.A.*,
667 F.3d 900 (7th Cir. 2012) .................................................... 5, 16

*Schmidt v. Smith & Wollensky LLC*,
Case No. 09-2752 (N.D. Ill)(Dkt. #73)..................................... 5, 20

*Schmidt v. Smith & Wollensky LLC*,
268 F.R.D. 323 (N.D. Ill. 2010).......................................... 5, 18, 20

*Scholes v. Stone, McGuire & Benjamin*,
143 F.R.D. 181 (N.D. Ill 1992)................................................... 19

*Swanson v. Am. Consumer Indus.*,
415 F.2d 1326 (7th Cir. 1966) ................................................ 15, 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ......................................................... 9

*Villanueva v. Davis Bancorp, Inc.*,
No. 09 C 7826, 2011 U.S. Dist. LEXIS 74089 (N.D. Ill. July 8, 2011) .......................... 15

*Wal-Mart Stores, Inc., v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................................... 16

*Williams-Green v. J. Alexander's Rests., Inc.*,
    No. 09 C 5707, 2011 U.S. Dist. LEXIS 99373 (N.D. Ill. September 1, 2011) .................. 5

*Winston v. Speybroeck*,
    No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131 (N.D. Ind. Aug. 2, 1996) ............. 13

*Yon v. Positive Connections, Inc.*,
    No. 04 C 2680, 2005 U.S. Dist. LEXIS 3396 (N.D. Ill. Feb. 2, 2005) ............................ 16

## STATUTES AND RULES

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* .................................................. *passim*

Illinois Minimum Wage Law, 810 ILCS 105/1 *et seq.* ............................................. *passim*

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Federal Rule of Civil Procedure 23(a) ........................................................................ 14

Fed. R. Civ. P. 23(a)(1) – (4) ..................................................................................... *passim*

Fed. R. Civ. P. 23(b) .................................................................................................... 14

Fed. R. Civ. P. 23(b)(1) – (3) ......................................................................... 15, 18, 20

Fed. R. Civ. P., 23(c)(2)(B) ......................................................................................... 21

Fed. R. Civ. P. 23(e) .................................................................................................... 21

Fed. R. Civ. P. 23(e)(1)(C) ............................................................................................ 9

## MISCELLANEOUS AUTHORITIES

1 Newberg on Class Actions, § 3.05 .......................................................................... 7, 8

*Manual for Complex Litigation* .......................................................................... 8, 14, 20

## I.  INTRODUCTION

Named Plaintiffs Martha Peraza and Maura Gawin (collectively, "Named Plaintiffs" or "Class Representatives") filed this action on behalf of themselves and all other persons similarly situated, alleging that Defendant Dominick's Finer Foods, LLC (hereinafter "Defendant" or "Dominick's") failed to pay employees one and one half times their regular hourly rate of pay for time they worked in excess of forty (40) hours in individual work weeks in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 810 ILCS 105/1 *et seq.*

Named Plaintiffs worked for Defendant as salaried Department Managers in the Starbucks kiosks located in Defendant's grocery stores. Named Plaintiffs' and other salaried Starbucks Department Managers' job responsibilities included operating registers, preparing beverages for customers, and stocking and re-stocking merchandise. Defendant classified Named Plaintiffs and other salaried Starbucks Department Managers as exempt from the overtime requirements of the FLSA and IMWL and did not pay Named Plaintiffs and other salaried Starbucks Department Managers overtime wages for the time they worked in excess of forty (40) hours a week.

After multiple mediation sessions with a well-respected mediator, the Parties reached a compromise on the claims asserted in the Lawsuit. The Parties move this Court for an order preliminarily 1) approving the Parties' Stipulation of Settlement and order approving class certification, 2) form and manner of class notice, 3) scheduling a Fairness Hearing for final approval of settlement, and 4) entering the order attached as Exhibit 1.  In further support of this Motion, Plaintiffs state as follows:

## II.     STATEMENT OF THE FACTS

### A.     Procedural Background

On November 23, 2011, Named Plaintiffs Martha Peraza and Maura Gawin filed this Action in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of themselves and others similarly situated, alleging that Defendant violated the Illinois Minimum Wage Law ("IMWL") and Fair Labor Standards Act ("FLSA") by classifying salaried Department Managers in the Starbucks cafes located inside Defendant's grocery stores as "exempt" and by not paying them overtime wages. Plaintiffs later filed a First Amended Complaint to correct the name of the Defendant. On January 6, 2012, Named Plaintiffs filed a Motion for Class Certification of Their Illinois Minimum Wage Law Claim and Request for Discovery on Class Certification Issues. ECF No. 8.  The Court entered and continued that motion. ECF No. 18. Later, the Parties filed a Stipulation, agreeing to dismiss that motion without prejudice and allowing Plaintiffs time to renew the motion. ECF No. 31.

Defendant filed its Answer on January 24, 2012, acknowledging that it classified Plaintiffs and other salaried Starbucks Managers as exempt from the FLSA and IMWL and acknowledging that it did not pay Plaintiffs and other salaried Starbucks Managers overtime wages. Defendant denies that the "exempt" classification was unlawful.

### B.     The Parties Thoroughly Investigated the Case

In February 2012, the Parties discussed the prospect for early settlement discussions and alternative dispute resolution. Declaration of Maureen A. Salas ¶ 13, attached hereto as Exhibit 2. Counsel for Plaintiffs requested that Dominick's produce payroll information to advance the parties' discussions on settlement.  *Id.* In February 2012, Defendant provided Plaintiff's Counsel with payroll and job history data for persons who were employed as salaried Starbucks Managers

between November 23, 2008 and December 31, 2011. *Id.* Counsel for Plaintiffs reviewed that information and issued a class-wide written settlement demand on April 26, 2012. *Id.*

The parties continued to discuss settlement, and in June 2012, the Parties scheduled a private mediation in this Action. On August 15, 2012, the Parties participated in a mediation with a highly regarded mediator, Lynn P. Cohn of Northwestern University School of Law. Ex. 2, Salas Decl. ¶ 14. The Parties were unsuccessful in resolving the class-wide claims on that date, but scheduled a second mediation session with Ms. Cohn for September 18, 2012. *Id.* The Parties were unsuccessful in resolving the claims at the second mediation session, but with the assistance of the mediator, the Parties were able to agree on a resolution of the class action claims raised in the lawsuit shortly following the September 18, 2012 mediation for a cash payment of $1,450,000.00. *Id.* Described in further detail below, the Settlement provides for a payment to all Class Members who do not opt-out of the Settlement. Ex. 2, Salas Decl. ¶ 14. Class Members do not need to submit claim forms to participate in the Settlement. *Id.*

## III.     THE PROPOSED SETTLEMENT

The details of the Settlement are contained in the Joint Stipulation of Settlement and Agreement to Settle Class Action Claims ("Settlement Agreement), a copy of which is attached as Attachment A to the Salas Declaration. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms.

### A.     The Proposed Settlement Class and Class Period

The Parties ask that the Court certify a class composed of:

> All persons who worked for Defendant in the State of Illinois in the job position
> Starbucks Manager between November 23, 2008 and November 14, 2012 ("Class
> Period") and who were paid on a salary basis (herein the "Class" or "Settlement
> Class").

The Settlement Agreement identifies the individuals who are members of the Settlement Class. Ex. 2, Salas Decl. ¶ 15, Attachment A (Stipulation of Settlement), Exhibit A (Class List).

**B.     Payments to Class Members**

Each Class Member's *pro rata* settlement share will be calculated as set forth in Section 8 of the Settlement Agreement. Class Members estimated payments are listed in Exhibit A of the Settlement Agreement.  For purposes of calculating payments to Class Members from the Settlement Fund, the gross compensation paid to each Class Member and the dates of employment each Class Member worked were determined from supplemental job history data Defendant produced to Plaintiffs' Counsel on October 19, 2012 and on November 1, 2012. Each Class Member will receive a Short Form Notice document that will identify the approximate amount they will be paid from the Settlement Fund. Each Class Member will have an opportunity to object to or opt-out of the Settlement.

The Settlement Agreement provides that Class Members do not need to submit a claim form to receive monetary benefits from the Settlement Fund. Class Members who do not exclude themselves from the settlement will not need to take any affirmative action to receive their share of the Settlement Fund. Class Members will have one-hundred eighty (180) days after the mailing of the settlement checks to cash their checks. If a check remains uncashed within one-hundred-eighty (180) days after it is mailed, the amount of such Settlement payments will revert to Defendant.

**C.     Class Representative and Opt-In Plaintiff Enhancement Payments**

The Settlement Agreement also contemplates enhancement payments to the Class Representatives and other actively-participating opt-in plaintiffs, to acknowledge their service to the class.  Plaintiffs shall request Enhancement Payments of seven thousand five hundred dollars

($7,500.00) for Named Plaintiffs Martha Peraza and Maura Gawin, as well as one thousand five hundred dollars ($1,500.00) for each plaintiff who filed a consent form and opted into this case. Ex. 2, Salas Decl., ¶ 17. These payments are in addition to any payment that these individuals receive as their *pro rata* share of the Settlement Fund. *Id.*

In light of their efforts resulting in a $1,450,000.00 settlement on behalf of the Settlement Class, the Named Plaintiffs are entitled to a modest enhancement payment. Ex. 2, Salas Decl., ¶ 18. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Recent decisions in this Circuit have approved incentive awards as high as $20,000 per named plaintiff. *See, e.g., Berger v. Xerox Corp. Ret. Income Guar. Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004)[1]; *see also Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill) (Dkt. #78, ¶5)(awarding $10,000 incentive award in Illinois Minimum Wage Law case).

In this case, the Named Plaintiffs were responsible for initiating and maintaining this action. They participated in the case, attended both mediation sessions, and performed everything that was asked of them. Ex. 2, Salas Decl., ¶ 19. The plaintiffs who filed consent forms to join this lawsuit – Lenise Maxey, Selena Mussay, Theresa Froelich, Juan Cuarenta, Yesenia Serna-Vazquez, Eralba Duckollari, Danielle Mayfield, and Paul Yamauchi – also provided a material service to the class. They provided valuable documents and information to Plaintiffs' Counsel that assisted the Named Plaintiffs in recovering wages on behalf of all Class

---

[1] All electronic cited in this memorandum are alphabetically attached as Group Exhibit 3.

5

Members. Ex. 2, Salas Decl., ¶ 19. Without the efforts of the Named Plaintiffs and the Consent Plaintiffs, this case would not have been filed and this settlement would not have been achieved. Ex. 2, Salas Decl., ¶ 19. As a result of these efforts and the result achieved, the incentive payments to these individuals are well justified.

### D. Settlement Administration and Notice

The Parties have agreed to recommend Simpluris, Inc. to perform the duties of Settlement Administrator. The duties of the Settlement Administrator are set forth in the Settlement Agreement and include: (1) issuing Class Notice forms; (2) issuing Settlement Payments; (3) calculating and remitting to the IRS all required payroll taxes; and (4) calculating and issuing Form W-2s and Form 1099s and any other required state and federal tax forms. The cost of administering the Settlement for 85 individuals is expected not to exceed $10,000. Defendant has agreed to cooperate with the Settlement Administrator to ensure that it has all of the information it needs to perform these tasks.

The Parties' proposed notice program includes the following: (1) a Short-Form Notice (Ex. B to the Stipulation of Settlement); (2) a Long-Form Notice (Exhibit C to the Stipulation of Settlement); and (3) a toll-free "800" number. The notice program provides that all Class Members would receive the Short-Form Notice by first-class mail, with a number of avenues thereafter to obtain additional information. Prior to mailing the Class Notice, the Settlement Administrator will verify the most recent mailing address for Class Members by using Accurint, or a comparable database. The Settlement Administrator shall promptly conduct a second mailing for any Class Member whose Summary Notice is returned as undeliverable within forty-five (45) days of the date of the initial mailing, provided that a forwarding address is provided by the U.S. Postal Service or otherwise located by the Claims Administrator.

While in an abbreviated form, the Short-Form Notice includes all essential information about the lawsuit required under Rule 23, including the persons affected, class definitions, the nature of the action, the possibility of, and method for, opting-out, along with a description of the various methods of obtaining additional information and obtaining a copy of the Long-Form Notice. Class Members seeking information beyond the essential details can request a copy through the Settlement Administrator or by contacting Plaintiffs' Counsel.

### E.    Attorneys' Fees and Costs

The Settlement Agreement provides that Plaintiffs' Counsel will apply to the Court for the payment of attorneys' fees and costs prior to the Final Approval Hearing, so that that issue can be resolved at that time.  Under the Agreement, Class Counsel may seek attorneys' fees not to exceed 33.33% of the Maximum Gross Settlement Amount, and litigation expenses and/or costs not to exceed $10,000.  Defendant shall not object to Class Counsel's fee and costs application within these limits.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

### A.    Settlement and Class Action Approval Process

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).  The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the

claims of the individual Class Members, would be impracticable. The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;
(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37.

The decision to approve a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985 ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute

[its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion). During the preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron*, No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090, at *24-25 (N.D.Ill. Jan. 22, 1997) (citation omitted). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. Although the Parties have requested a hearing and the Court has set a preliminary approval hearing date, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling Parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.

**B.    The Criteria for Preliminary Settlement Approval Are Satisfied.**

A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists

9

when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The parties' settlement meets all these criteria and clearly falls "within the range of possible approval." *Cook*, 1997 U.S. Dist. LEXIS 1090, at *24-25.

> **1. Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiffs' claims. *See id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker & Sons, Inc*., 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The consideration to be paid by Defendant to the Class here is considerable and the plan of allocation is reasonable. The Net Settlement Fund provides for approximately $919,666.67 to be paid to 85 Class Members as overtime pay awards and interest awards. Class Members do not need to submit a claim form to participate in the Settlement. Class Members will receive their

*pro rata* share of the Settlement based on their length of employment with Defendant and based on their salary. This is an excellent result for participating Class Members.

### 2.      Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement.   *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case.   Further litigation would require depositions and additional motion practice relating to discovery and dispositive motions would be certain. Plaintiffs and the Class Members may also have been required to confront appeals. Additional litigation would increase the expenses of this litigation but would not have reduced the risks the litigation held for the Class.   *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers (In re Harnischfeger Indus., Inc.)*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002).   Accordingly, the remaining burden, expenses, and risks for Plaintiffs and the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense.

### 3.      There Is No Opposition To The Settlement

The class representatives support the settlement, as do Plaintiffs' Counsel and Defendant. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement, which provides an excellent result to all class members. Ex. 2, Salas Decl. ¶ 21.

### 4. Opinion of Counsel

Plaintiffs' Counsel are experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. See, Ex. 2, Salas Decl. ¶ 20. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Settlement by Plaintiffs' Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims, the time costs and expense of protracted litigation, discovery, trial and appeals. The Settlement was only reached after the conclusion of two mediation sessions overseen by a well-respected mediator. Ex. 2, Salas Decl. ¶ 22. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1020 (N.D.Ill. 2000); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

### 5. The Stage of the Proceedings and Discovery Completed

As explained above, this complex class action was resolved only after Defendant produced employment history and salary information for the class, and after the Parties engaged in two mediation sessions with a third party mediator. In addition, at the time the action was resolved, eight individuals, in addition to the Named Plaintiffs, opted into this action and provided information and documents to Plaintiffs' Counsel. The stage of litigation has advanced

so that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. Ex. 2, Salas Decl., ¶ 23.

### 6. The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion

The Settlement was the result of adversarial, arm's length negotiations that took place after investigation, informal discovery and substantial assistance from a third party mediator. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d at 1020. The pre-filing litigation activities as well as extensive post-filing litigation activities demonstrate the adversarial nature of this litigation and settlement. The Parties were able to settle this action only after they engaged in discovery, as well as a vigorous and comprehensive vetting of the claims, a mediation, and three months of further negotiations.

Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). Therefore, the Court should find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

### C. Provisional Certification of the Settlement Class is Appropriate

Class certification is appropriate, in part, because the Parties have reached an agreement regarding class certification in the context of this Settlement. Plaintiffs request that the Court

13

enter an order certifying the Settlement Class for settlement purposes so that notice of the proposed Settlement can be issued to the Settlement Class and so that Class Members will be informed of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing. *See Manual for Complex Lit.* at §§ 21.632, 21.633.

A determination of class certification requires a two-step analysis. Fed. R. Civ. P. 23(b); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). First, the plaintiff must demonstrate that the action satisfies the four threshold requirements of Rule 23(a): (1) numerosity (the class must be so large that individual joinder is "impracticable"); (2) commonality (questions of law or fact common to the class); (3) typicality (named plaintiff claims are typical of the class's claims); and (4) adequacy of representation (the class representative must be able to fairly and adequately protect class interests). Fed. R. Civ. P. 23(a)(1) – (4).

Second, the action must qualify under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario,* 963 F.2d at 1017; *Arango v. GC Services, LP, et al.*, No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124, at *3 (N.D. Ill. June 10, 1998). Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P.

23(b)(1) – (3).[2]

The claims raised in this matter meet each of the statutory requirements for class treatment.

### 1.    The Requirement of Numerosity is Met

Rule 23(a)(1) requires a class large enough that the joinder of all members would be "impracticable." Impracticability does not mean "impossibility," but only difficulty or inconvenience in joining all members of the class. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 471 (N.D. Ill. 1992). To determine whether joinder is impracticable, courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). These circumstances include whether it is feasible for class members to bring individual suits and whether it is judicially efficient for the court to try such individual cases. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson*, 415 F.2d at 1333.

In this case, that threshold requirement is easily met. Eighty-five (85) salaried Starbucks managers were classified as exempt during the Class Period and were not paid one and one half times their regular rate for overtime hours worked. Ex. 2, Salas Decl. ¶ 24, Attachment A (Stipulation of Settlement), Exhibit A (Class List). A class of this size easily satisfies the

---

[2]      Illinois state and federal courts often have granted class certification of wage claims. *See, e.g.*, *Ross v. RBS Citizens, N.A.,* 667 F.3d 900, 910 (7th Cir. 2012); *Kernats v. Comcast,* Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010)(IMWL claims for overtime pay); *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323 (N.D. Ill. 2010)(IMWL claims for overtime pay); *Williams-Green v. J. Alexander's Rests., Inc.*, No. 09 C 5707, 2011 U.S. Dist. LEXIS 99373 (N.D. Ill. September 1, 2011)(IMWL claims for minimum wages); *Villanueva v. Davis Bancorp, Inc.,* No. 09 C 7826, 2011 U.S. Dist. LEXIS 74089 (N.D. Ill. July 8, 2011)(IMWL claims for owed overtime pay); *Barragan v. Evanger's Dog & Cat Food Co.,*

numerosity requirement found necessary in this District. *Yon v. Positive Connections, Inc.,* No. 04 C 2680, 2005 U.S. Dist. LEXIS 3396, at *5 (N.D. Ill. Feb. 2, 2005)(Darrah, J.)(certifying IMWL class for owed overtime pay where documents showed at 39 employees owed overtime pay); *Swanson*, 415 F.2d at 1333 n.9 (noting that 40 class members would be sufficient).

### 2.     These Issues Meet the Commonality Requirements

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied with one issue common to all class members. *Ross v. RBS Citizens, N.A.,* 667 F.3d 900, 908 (7th Cir. 2012). "To satisfy the commonality element, it is enough for plaintiffs to present just one common claim." *Id. citing Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541 at 2556 (2011). "[T]he common issue of whether a company-wide policy existed to deny overtime will predominate over the variations in methods used to accomplish the alleged policy." *Ross,* 667 F.3d at 907; *Kernats v. Comcast,* Nos. 09 C 3368 and 09 C 4305, 2010 U.S. Dist. LEXIS 112071, at *11-12 (N.D. Ill., Oct. 20, 2010) (IMWL claims for overtime pay).

There is a low threshold for satisfying the commonality prerequisite and where a defendant directs standardized conduct toward the class, commonality is typically found. *Ross,* 667 F.3d at 910; *Kernats,* 2010 U.S. Dist. LEXIS 112071, at *16 (N.D. Ill. Oct. 20, 2010)(certifying IMWL and IWPCA claims for off the clock work and stating that "standardized conduct on the part of [defendant] are enough to meet the relatively low hurdle of proving commonality").

Defendant acknowledges that it classified Plaintiffs and other salaried Starbucks Managers as exempt from the FLSA and IMWL and did not pay salaried Starbucks Managers

---

259 F.R.D. 330 (N.D. Ill. 2009)(IMWL claims for owed overtime pay); *Cruz v. Unilock Chi.,*

overtime wages. Here, common questions include whether Starbucks Managers' duties fit within the administrative exemption of the IMWL: (i) whether their primary duty involves performing office or non-manual work directly related to the management or general business operations of Defendant, and (ii) whether their primary duty involved the exercise of discretion and independent judgment with respect to matters of significance. In addition, common questions exist relating to the appropriate method of computing the overtime wages due, if any, namely whether a fluctuating work week method applies.

### 3.    The Issues Meet the Typicality Requirements

The Rule 23(a)(3) requirement of typicality is met here as well.  Claims of the class representative and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory.  *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998); *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983).  Typicality and commonality are closely akin.  *Rosario*, 963 F.2d at 1018.  "Typical does not mean identical, and the typicality requirement is liberally construed."  *Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 57 (N.D. Ill. 1996).

The claims of the Named Plaintiffs and Class Members arise from the same actions of Defendant.  Defendant did not pay salaried Starbucks Managers overtime wages based on the same classification decisions.  Thus, the claim arises from the same actions of Defendant. *Kernats,* 2010 U.S. Dist. LEXIS 112071, at *12-13; *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (typicality is meant to insure that the claims of the class representative have the "same essential characteristics as the claims of the class at large.").

---

*Inc.*, 383 Ill. App. 3d 752; 892 N.E.2d 78 (Ill. App. 2008)(IMWL claims for overtime pay).

#### 4. Adequacy of Representation is Satisfied

##### a. Plaintiffs' Counsel is Experienced and Qualified

Plaintiffs and Plaintiffs' counsel will also fairly and adequately protect the interests of the class. Plaintiffs' counsel are experienced class action attorneys and have acted as representative counsel in numerous actions in federal and state courts. Ex. 2, Salas Decl. ¶ 29; *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 328 (N.D. Ill. 2010) ("[Douglas M. Werman] is qualified to serve as class counsel in the pending litigation because [he is a] highly experienced attorney[] and [has] acted as class counsel in similar actions in federal and state courts."); *Kernats,* 2010 U.S. Dist. LEXIS 112071, at *12-13.

##### b. There is No Conflict of Interest Between Named Plaintiffs and the Class

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)(quoting *Krueger v. New York Tel. Co*., 163 F.R.D. 433 (S.D.N.Y. 1995)). The Class Representatives have no antagonistic interests that go to the subject matter of the lawsuit. The Class Representatives worked in the same job position and were paid in the same manner as all other Class Members.

#### 5. Rule 23(b)(3) is Satisfied

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The class certification requested here meets those standards.

An action demonstrates a "predominance" of common questions where "the group for which certification is sought seeks to remedy a common legal grievance." *Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D.Ill 1986). The test is *not* whether resolution of "common issues" would be dispositive of the entire litigation. *Id*. Rather, as the court observed in *Johns v. DeLeonardis*, 145 F.R.D. 480, 484-85 (N.D. Ill. 1992):

> [Subsection (b)(3)] merely requires that the class claims have a dominant, central focus. Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?

For the reasons set forth above with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3), there exist predominating common questions of fact and law, and the class members' claims arose from the same actions of as those of the Named Plaintiffs.

A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially dozens of individual lawsuits and piecemeal litigation. Likewise, a class action is an appropriate method for the fair and efficient adjudication of the controversy between the class and Dominick's. In this proceeding, the Parties will be allowed to resolve the claims of 85 persons in one coordinated proceeding, thus conferring significant benefits upon each class member if their claims are deemed to have merit. Dominick's will also benefit by being spared the expense and potential inconsistency of scores of individual lawsuits.

### D. The Parties' Proposed Notice Program

The notice protocol identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23 (e)(1)(B) requires the Court to 'direct notice in a reasonable

manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

Several recent cases have approved the use of the short-form notice to provide notice to absent class members: *Rosales v. Randstad*, No. 09 C 1706 (N.D. Ill. 2009) (Dkt. # 152, at ¶6); *Schmidt v. Smith & Wollensky, LLC*, Case No. 09 C 2752 (N.D. Ill. 2009) (Dkt. #73, at ¶3); *Arrez v. Kelly,* No. 07 C 1289 (N.D. Ill.) (Dkt. #158, at 7-18); *Polk v. Adecco*, 2006 CH 13405 (Chancery, Cook Cir. Ct.); *Driver v. AppleIllinois LLC*, Case No. 06 C 6149 (N.D. Ill.) (Dkt. #239); *Garcia v. Ron's Temporary Staffing*, 2006 CH 15361 (Chancery, Cook Cir. Ct.); *Ortegon, v. Staffing Network, Inc*., 2006 CH 12679 (Chancery, Cook Cir. Ct.). For example, Judge Leinenweber approved the use of a short-form notice in the *Arrez* case, which is the largest wage and hour case in Illinois history with a class of approximately 96,000 low-wage workers.[3]

The principal reason that courts are approving notice procedures with short-form documents is comprehension and readability: Rule 23 requires that the court direct "best notice" that conveys the needed information "clearly and concisely in plain, easily understood

---

[3] In *Driver*, Magistrate Judge Brown approved a notice program similar to the one proposed in this case for over 13,000 tipped employees working in 34 Applebee's restaurants in Illinois. Likewise, in *Ortegon, Polk and Garcia,* Cook County Chancery judges, including Chief Judge Kinnaird (*Ortegon*), approved the use of a short-form notice, and a notice program similar to the one proposed in this case. Collectively, in these cases alone, notice programs similar to that proposed here were found adequate in claims of over 170,000 persons employed in the State of Illinois. Plaintiffs' counsel here were class counsel in the *Rosales, Schmidt*, *Arrez, Driver*, *Ortegon*, *Polk* and *Garcia* cases.

language." Fed. R. Civ. P., 23(c)(2)(B). The short-form notice is more likely to be read by Class Members, and if read, more likely to be understood.

The Parties' proposed notice procedure meets the requirements of Rule 23, and accordingly Plaintiffs' request that the Court approve the Notice forms and protocol.

### E. Scheduling Final Approval Hearings Is Appropriate

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition, Class Members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval.

Respectfully submitted,

Dated: November 9, 2012

s/ Maureen A. Salas
Douglas M. Werman - dwerman@flsalaw.com
Maureen A. Salas – msalas@flsalaw.com
David E. Stevens – dstevens@flsalaw.com
Werman Law Office, P.C.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiffs

21