**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARTHA PERAZA and MAURA GAWIN, individually and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | **Civil Action No. 11 C 8390** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Lee** |
| **v.** | ) | |
| | ) | |
| **DOMINICK'S FINER FOODS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT**

Dated: March 5, 2013

Douglas M. Werman
Maureen A. Salas
David E. Stevens
Werman Law Office, P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

I.    INTRODUCTION ...........................................................................................1

II.   STATEMENT OF FACTS ............................................................................1

      A.    Factual And Procedural Background ……..........................................1

      B.    The Court's Preliminary Approval Order, Notice and Claim  Administration.......1

III.  THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 AND THE COURT'S NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER ................................................................................4

IV.  FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ...........................5

      A.    The Settlement is Fair, Adequate, and Reasonable................................6

           1.   Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment ..............................................6

           2.   Complexity, Length, And Expense of Further Litigation ................................7

           3.   The Settlement Was the Result of Arm's-Length Negotiations Free From Collusion .................................................................................7

           4.   Opinion of Counsel ................................................................8

            5.   Lack of Objections to The Settlement ..........................................9

           6.   Stage of the Proceedings and the Amount of Discovery Completed...............9

      B.    The Settlement is Appropriate ..................................................10

V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE....................10

      A     The Settlement Class Satisfies All Rule 23(a) Requirements...............................10

      B.    The Settlement Class Satisfies All Rule 23(b)(3) Requirements.........................11

VI.  THE SERVICE AWARDS FOR CLASS REPRESENTATIVES AND OPT-IN PLAINTIFFS ARE APPROPRIATE ...............................................................12

VII.   THE PAYMENT OF ATTORNEYS' FEES EQUAL TO ONE-THIRD OF THE
       SETTLEMENT FUND IS REASONABLE .................................................................... 13

       A.   The Percentage of the Fund Method of Awarding Attorneys' Fees is Appropriate in
            Common Fund Cases ..................................................................................................... 14

       B.   The Attorneys' Fee Request is a Reflection of the Relevant Market .................... 15

            1.   The Requested Attorneys' Fee Award Reflects the Normal Rate of
                 Compensation in this Market ........................................................................ 15

            2.   The Results and the Benefits Conferred Upon the Class Justify the
                 Requested Award .......................................................................................... 17

       C.   The Payment of Class Counsel's Costs and Expenses Is Appropriate .................. 18

VIII.  CONCLUSION ............................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Acosta vs. Scott Labor,*
    No. 05 C 2518 (N.D. Ill. Mar. 10, 2008) .............................................................. 16

*Armstrong v. Bd. Of Sch. Dist.,*
    616 F.2d 305 (7th Cir. 1980) ............................................................................... 5

*Arrez v. Kelly Services, Inc.,*
    No. 07 C 1289 (N.D. Ill. Oct. 8, 2009) ................................................................ 16

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ........................................................................................... 13

*Donovan v. Estate of Fitzsimmons,*
    778 F.2d 298 (7th Cir. 1985) ............................................................................... 5

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ............................................................................................. 5

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1998) ............................................................................ 5, 6

*Flores v. Jorge Arteaga Corp.,*
    Case No. 05 C 2057 (N.D. Ill.) .......................................................................... 16

*Gonzalez v. Labor Network,*
    Case No. 05 C 4864 (N.D. Ill.) .......................................................................... 16

*Great Neck Capital Appr. Inv. P'Ship, L.P. v. Pricewaterhouse Coopers,*
    212 F.R.D. 400 (E.D. Wis. 2002). ........................................................................ 7

*Hispanics United of DuPage County v. Village of Addison, Illinois,*
    988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................................... 9

*In re Mexico Money Transfer Litig.,*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......................................................... 5, 7, 9

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) .............................................................................. 14

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ............................................................................ 5, 7

*Kim v. CHT Corp.,*
Case No. 03 C 7362 (N.D. Ill.) ......................................................................... 16

*M. Berenson, Inc., v. Fanueil Hall Marketplace, Inc.,*
671 F. Supp. 819 (D. Mass. 1987) ...................................................................... 8

*Mangone v. First USA Bank,*
206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................... 9

*Mars Steele Corp. v Continental Illinois Nat'l Bank & Trust Co.,*
834 F.2d 677 (7th Cir. 1987) .............................................................................. 6

*Matter of Continental Illinois Securities Litigation,*
962 F.2d 566 (7th Cir. 1992) ............................................................................. 14

*Meyenburg v. Exxon Mobil Corp.,*
No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057 (S.D. Ill. June 6, 2006) ............... 8, 9

*Ortegon, et al. v. Staffing Network, Inc.,*
2006 CH 12679 (Chancery, Cook Cir. Ct.) ....................................................... 16

*Perezchica, et al. vs. Eastco International Corp., et al.,*
Case No. 07 CH 04726 (Chancery, Cook Cir. Ct.) ............................................ 16

*Perry v. National City Bank,*
Case No. 05 C 891 DRH (S.D. Ill.) .................................................................. 16

*Polk v. Adecco,*
2006 CH 13405 (Chancery, Cook Cir. Ct.) ....................................................... 16

*Ramah Navajo Chapter v. Babbitt,*
50 F. Supp. 2d 1091 (D. N.M. 1999)................................................................. 17

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP,*
No. 97 C 7694, 2001 U.S. Dist LEXIS 20397 (N.D. Ill. 2001) ......................... 15

*Reynolds v. Beneficial Nat'l Bank,*
288 F.3d 277 (7th Cir. 2002) .............................................................................. 6

*Romo, et al. v. Manpower, Inc., et al.,*
No. 09 C 3429 (N.D. Ill. May 24, 2012)............................................................ 15

*Rosales v. The Placers, Ltd.,*
Case No. 09 C 1706, ECF No. 162 (N. D. Ill.).................................................. 15

*Sanchez v. Stampede Meat, Inc.,*
  Case No 02 C 5452 (N.D. Ill.) ................................................................. 16

*Schmidt v. Smith & Wollensky LLC,*
  Case No. 09-2752 (N.D. Ill.) ................................................................. 16

*Schulte v. Fifth Third Bank,*
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................... 14

*Skelton v. Gen. Motors Corp.,*
  860 F.2d 250 (7th Cir. 1988) ................................................................ 13

*Sutton v. Bernard,*
  504 F.3d 688 (7th Cir. 2007).. ...................................................... 13, 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
  463 F.3d 646 (7th Cir. 2006) ................................................................. 6

*Taubenfeld v. AON Corp.,*
  415 F.3d 597 (7th Cir. 2005) ................................................................ 14

*Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.,*
  No. 02 C 1109-DRH, 2004 U.S. Dist. LEXIS 6363 (S.D. Ill. Mar. 19, 2004)...................... 15

*Wal-Mart Stores, Inc. v. Visa USA, Inc.,*
  396 F.3d 96 (2d Cir. 2005) .................................................................... 9

*Will v. General Dynamics Corp.,*
  No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ..................... 14

*Williams v. General Elec. Capital Auto Lease,*
  No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179 (N.D. Ill. Dec. 16, 1995) ......................... 14

*Williams v. Volt Mgmt. Corp.,*
  Case No. 10 C 3927 (N.D. Ill.) ............................................................. 15

*Winston v. Speybroeck,*
  No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131 (N.D. Ind. Aug. 2, 1996) ............... 8, 9

## STATUTES AND RULES

Illinois Minimum Wage Law, 820 ILCS §105/1, *et seq.* ................................................. 10, 11, 16

Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* .................................................. 11

Fed. R. Civ. P. 23 .......................................................................................... 4

Fed. R. Civ. P. 23(a) .................................................................................. 10

Fed. R. Civ. P. 23(a)(1) ............................................................................. 10

Fed. R. Civ. P. 23(a)(2) ............................................................................. 10

Fed. R. Civ. P. 23(a)(3) ............................................................................. 11

Fed. R. Civ. P. 23(b)(3) ........................................................................ 10, 11

Fed. R. Civ. P. 23(c)(2) ........................................................................... 5

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 4, 5

Fed. R. Civ. P. 23(e) ............................................................................. 5, 8

## MISCELLANEOUS AUTHORITIES

1 Newberg on Class Actions, § 3.05 ............................................................... 10

## I.      INTRODUCTION

This Court granted preliminary approval of the Parties' Class Action Settlement

Agreement on November 20, 2012.  ECF No. 45.[1]  The Parties now seek final approval of that

Class Action Settlement Agreement because it is "fair, adequate and reasonable."  Indeed, the

Settlement far exceeds this approval standard because it provides earned and unpaid overtime

wages to all 85 class members without the need for Class Members to file claims.  The Parties'

Settlement is also strongly supported by the Settlement Class itself.  Of the 85 eligible Class

Members, *none* filed objections to the Settlement and *none* sought exclusion from the

Settlement.

For the reasons further explained below, Plaintiffs Peraza and Gawin request that the

Court enter an order of final approval, in the form attached hereto as Exhibit 1.

## II.     STATEMENT OF FACTS

### A.      Factual And Procedural Background

The procedural history of the Litigation is detailed in the Parties' Motion for Preliminary

Approval of Proposed Settlement and for Class Certification (ECF No. 43, at 1-3), and is not

repeated here.

### B.      The Court's Preliminary Approval Order, Notice and Claim Administration

In the Preliminary Approval Order, the Court provisionally certified the following

Settlement Class:

All persons who worked for Defendant in the State of Illinois in the job position
Starbucks Manager between November 23, 2008 and November 14, 2012 ("Class
Period") and who were paid on a salary basis (herein the "Class" or "Settlement

---

[1] "ECF No.___" refers to the docket entry in this matter.  All capitalized terms are defined in the
Settlement Agreement.  *See* Mot. Prelim. App'l, Ex. 2, Salas Decl., Attach. A (Joint Stipulation
and Agreement to Settle Class Action Claims), ECF No. 43-1.

Class"). [ECF No. 45, ¶ 2]

Pursuant to the Preliminary Approval Order, the Parties directed the Settlement Administrator, Simpluris, Inc. (hereinafter, the "Settlement Administrator") to serve notice to the members of the Settlement Class by the means approved by the Court and agreed to by the Parties in the Settlement. ECF No. 45, ¶ 4; *See* Ex. 2, Springer Decl. ¶ 3.

On November 21, 2012, Simpluris received Class Counsel's Settlement Spreadsheet ("Database") of all Class Members, including their last known addresses and their total overtime wages and interest owed payments. Ex. 2, Springer Decl. ¶ 4. The database of the Settlement Class contained data for eighty-five (85) Class Members. *Id.* Simpluris processed and updated the mailing addresses contained in the database of the Settlement Class using Accurint, a reputable research tool owned by Lexis-Nexis. Ex. 2, Springer Decl. ¶ 5. Simpluris used the Class Member's name, last known address, and social security number to locate a current address. *Id.* In the event that an updated address was found, it was utilized in connection with the mailing of the Summary Notice. *Id.*

On December 11, 2012, Simpluris mailed a Summary Notice of Class Action Settlement ("Class Notice") via First Class mail to the eighty-five (85) Class Members in the Database. Ex. A, Springer Decl., ¶ 6, Attachment A. The Class Notice was personalized with the Class Member's estimated unpaid overtime and interest payments under the Settlement Agreement. *Id.* The documents indicated a deadline of February 12, 2013, to return an Exclusion Request or an Objection. *Id.*

In addition to the Notice that Class Members received by First Class mail, interested Class Members could obtain a copy of the Complete Class Notice by request to Simpluris. Ex. 2, Springer Decl., ¶ 7, Attachment B.

2

If a Settlement Class Member's Summary Notice was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e., skip trace) using Accurint. Ex. 2, Springer Decl., ¶ 8. Simpluris used the Class Member's name, previous address and Social Security Number to locate a current address. *Id.* If a new address did not generate while doing the search, Simpluris mailed a Summary Notice to the original address provided. *Id.* Altogether, nine (9) Summary Notices were re-mailed to either a newfound address, an original address provided by Counsel, a forwarding address provided by the U.S. Postal Service, or by request. *Id.* As of March 5, 2013, there were no undeliverable Summary Notices. *Id.*

A toll-free telephone number was included in the Summary Notice for the purpose of allowing Settlement Class Members to call Simpluris and to make inquiries regarding the Settlement. Ex. 2, Springer Decl., ¶ 9. The telephone system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process. *Id.* Callers have the option to speak with a live call center representative during normal business hours or to leave a message and receive a return call during non-business hours. *Id.* The toll-free telephone number included in the Class Notice was 1-888-369-3780.

The deadline to return an Exclusion Request or an Objection Form was February 12, 2013. Ex. 2, Springer Decl., ¶ 6. As of March 1, 2013, Simpluris has not received any Exclusion Requests. Ex. 2, Springer Decl., ¶ 10. Class Members who wished to object were directed to submit a letter to the Settlement Administrator within sixty-three (63) days of the mailing of the Class Notice, signed by the Class Member, explaining in detail any objections or other opposition to the Settlement. Ex. 2, Springer Decl., ¶ 11. As of March 1, 2013, Simpluris has not received any objections. *Id.*

3

As described in Paragraph 8 of the Settlement Agreement, the calculation of the settlement benefit is based on each Class Member's regular rate of pay and number of weeks worked during the class period. Ex. 2, Springer Decl., ¶ 13.  The approximate total amount of the Overtime Awards Fund is $924,207.65.  *Id*.  In accordance with the Settlement Agreement, Class Members are not required to file claims to receive their ratable portion of the Net Settlement Fund.  *Id*. Based on the Overtime Awards Fund of $924,207.65, Class Members' ratable awards are set forth on Attachment D of the Springer Declaration. Ex. 2, Springer Decl. ¶ 13, Attachment D.  The highest settlement award to be paid is $21,781.90, and the average award to be paid is $10,873.03. *Id*.

The Settlement Administrator's total costs for services performed in connection with the administration of the Settlement, including fees incurred and future costs for completion of the administration is $10,088. Ex. 2, Springer Decl. ¶ 14.

## III.  THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 AND THE COURT'S NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER

In the Preliminary Approval Order, the Court determined that the form, content, and proposed distribution of the Class Notice met the requirements of federal law and due process, and was the best notice practicable under the circumstances.[2]  (*See* ECF No. 45, ¶ 6).

---

[2] The Notice approved by the Court informed Class Members of the pendency of the Class Action Litigation, the definition of the Class, the alleged claims in dispute, the terms and conditions of the proposed Settlement, information regarding attorneys' fees, costs, and expenses, a request for service awards to the class representatives and opt-in plaintiffs, the procedures for allocating and distributing the settlement fund, an estimate of a Class Member's individual recovery, the contact information for the Claims Administrator and Class Counsel and the procedure for making inquiries, the deadlines for taking action, Class Members' individual rights under the Settlement, including the right to exclude themselves from the Settlement Class, the manner and consequences for doing so, the right to file any objections to the Settlement, and the right to attend a fairness hearing during which such objections will be heard as required by Rule 23(c)(2)(B).  *See* Ex. 2, Springer Decl., ¶¶ 6-7, Attachments A and B.

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

The Parties' and the Settlement Administrator's extensive efforts to effectuate notice to the class, as described above, meet the requirements of Rule 23(c)(2)(B).

## IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Although class settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate. *Id.* In determining whether a class settlement meets that standard, courts in the Seventh Circuit consider a variety of factors including:

> (a) the strength of plaintiffs' case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed.

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) *citing Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985). The court must consider the facts in the light most favorable to the settlement. *Id.* The determination that a settlement is fair is left to the sound discretion of the trial court. *Armstrong v. Bd. of Sch. Dist.*, 616 F.2d 305, 313-14 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

### A.      The Settlement is Fair, Adequate, and Reasonable

#### 1.      Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment

In assessing the fairness of a class settlement, the most important factor is the strength of the plaintiff's case on the merits compared with the amount offered in the settlement.  *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2005).  "In conducting this analysis, the district court should begin by 'quantifying the net expected value of continued litigation to the class.' To do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Id., quoting Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002) (internal citation omitted).

Although the Seventh Circuit has recognized that precision in valuing a case cannot be expected, the court should require that the parties present evidence that would enable estimates of possible outcomes, so that the court can at least come up with a "ballpark valuation."  *Id. quoting Reynolds*, 288 F.3d at 285.  In essence, a court must weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class's claims.

In this case, there is no question that this factor supports the approval of the Parties' Settlement.  The Settlement approximates the full relief Class Members could have expected to receive if this matter were tried, less the costs of trial, if Plaintiffs entirely prevailed on all their claims by proving they were misclassified as exempt, worked forty-five (45) hours each work week they were employed by Defendant, *and* if Defendant failed to prevail on its affirmative defense of good faith.  *See Mars Steele Corp. v Continental Illinois Nat'l Bank & Trust Co.,* 834 F.2d 677, 682 (7th Cir. 1987).  This strongly supports a finding that the Settlement is fair, adequate, and reasonable.

### 2.      Complexity, Length, And Expense of Further Litigation

The second factor to be considered by a court is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019.

This class action, involving the claims of 85 persons, was resolved only after litigation and extensive analyses of the Class's potential damages. Had this litigation continued, Defendant would have aggressively defended this case by continuing to assert that Plaintiffs were not misclassified as exempt. Further litigation would have required more discovery, including depositions and possible expert discovery. Additional motion practice relating to discovery and dispositive motions would be certain. And whatever the outcome, the Parties would have confronted appellate litigation. This further litigation would have increased the expense to Named Plaintiffs and the Settlement Class, but would not have reduced the risk of the litigation. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *Great Neck Capital Appr. Inv. P'ship, L.P. v. PricewaterhouseCoopers*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002).

The results achieved by this Settlement, when measured against the remaining burden, expense, and risk for Plaintiffs and the Settlement Class, militates in favor of approval of the Parties' Settlement.

### 3.      The Settlement Was the Result of Arm's-Length Negotiations Free From Collusion

In determining whether a settlement was reached absent any collusion between the Parties, courts look to whether the settlement is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020.

Here, the negotiation was conducted at arm's-length, by experienced Class Counsel and

Counsel for Defendant, free from fraud or collusion. Ex. 3, Werman Decl., 21. The Parties were able to settle this action only after Defendant provided Class Counsel with pay and job history data for persons who were employed as salaried Starbucks Managers during the Class Period and after the Parties participated in two mediation sessions with a private mediator. *Id.* at ¶ 14. In advance of the mediation, the Parties prepared settlement statements, including damages calculations. *Id.* During the mediation, the Parties argued their positions and cited evidence supporting those positions. *Id.*

Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *M. Berenson Co., Inc., v. Fanueil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-6 (N.D. Ind. Aug. 2, 1996).

The Court should find that the Settlement meets the requirements of Rule 23(e) and was the result of arm's-length bargaining. *See Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057, at *16 (S.D. Ill. Jun. 6, 2006) (no collusion between the parties found where the settlement agreement was reached three years after plaintiff began investigating the case and after a lawsuit was brought and litigated for two years.)

### 4.    Opinion of Counsel

Class Counsel are experienced in class action litigation and had a substantial amount of information to evaluate and negotiate the Settlement. The Settlement was reached after lengthy and extensive negotiations. Ex. 3, Werman Decl., ¶ 14. In Class Counsel's opinion, the

8

Settlement is fair, reasonable and adequate. *Id.* at ¶ 13. It is appropriate for the Court to place significant weight on the strong endorsement of this Settlement by Class Counsel. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *see also Meyenburg*, 2006 U.S. Dist. LEXIS 97057, at *17-18.

### 5. Lack of Objections to The Settlement

An absence of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same); *see also Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Here, no Class Members objected to the Settlement. Ex. 2, Springer Decl., ¶ 11. In addition, no Class Member requested to exclude himself or herself from the Settlement. Ex. 2, Springer Decl. ¶ 10. Thus, this factor also militates in favor of approving the Settlement.

### 6. Stage of the Proceedings and the Amount of Discovery Completed

At the time of mediation and settlement, the litigation had progressed to a stage where the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation. Defendant produced pay and job history data for the entire class, and Class Counsel was able to perform a comprehensive damage analysis with that data. Ex. 3, Werman Decl. ¶ 15. Thus, the stage of the proceedings warrants approval of the Settlement. *See Winston*, 1996 U.S. Dist. LEXIS 12131, at *15-6; *Meyenburg*, 2006 U.S. Dist. LEXIS 97057, at *19.

### B. The Settlement is Appropriate

The Settlement of this action resolves a case that is over a year old. The case progressed to a point in time where experienced Class Counsel can represent to the Court that the Settlement is a fair and reasonable resolution of this lawsuit. Ex. 3, Werman Decl. ¶ 13. No class members excluded themselves. Ex. 2, Springer Decl. ¶ 10. All 85 Class Members will receive settlement awards, and the entire Overtime Awards Fund will be distributed to all Class Members, without requiring the submission of a claim form. Ex. 3, Werman Decl. ¶ 18. In addition, Class Members are only providing Defendant with a limited release. Ex. 3, Werman Decl. ¶ 19.

## V. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court found in granting Preliminary Approval that, for settlement purposes, the Parties' proposed Class is proper under Rule 23(a) and 23(b)(3). (ECF No. 45, ¶ 2.) Since the Court's Order, no objections to the Settlement or to class certification have been received. As recognized in the Settlement and the Court's Preliminary Approval Order, the Settlement Class is appropriate for the reasons summarized below.

### A. The Class Satisfies All Rule 23(a) Requirements

Numerosity: Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The Class provisionally certified by the Court includes 85 members. Ex. 2, Springer Decl., ¶ 4. This meets the numerosity requirement whereby joinder is impracticable. 1 Newberg on Class Actions § 3.05 at 3-23 to 3-24.

Commonality: Members of the Settlement Class share common questions of law with respect to their various claims and their claims are factually linked through Defendant's classification of all Class Members as exempt from the IMWL. As found in the Court's Preliminary Approval Order, Plaintiffs' claims satisfy the commonality requirement of Rule 23(a)(2).

Typicality:  As this Court concluded in its Preliminary Approval Order, the Rule 23(a)(3) typicality prong is satisfied.  The overtime pay claims of the Named Plaintiffs are typical of the claims of the Settlement Class.  The Court's finding has not been challenged since the date of the Court's Preliminary Approval Order.

Adequacy:  No objection or information contrary to the finding of adequacy in the Court's Preliminary Approval Order has been raised contesting the ability of the Named Plaintiffs and Class Counsel to fairly and adequately protect the interests of the Class.  No evidence has arisen of an improper conflict of interest between the Named Plaintiffs and their counsel and any members of the Settlement Class.  Moreover, Class Counsel's experience litigating wage and hour collective and class actions has enabled them to vigorously represent the interests of the Class throughout the litigation and settlement of this action, and Class Counsel will continue to do so.

**B.     The Class Satisfies Rule 23(b)(3) Requirements**

As found in the Court's Preliminary Approval Order, the Class meets the requirements of Rule 23(b)(3) in that common questions of law affecting proposed Class Members predominate over questions affecting individual members, and class resolution is superior to other available methods.

Predominance: Since the Court's Preliminary Approval Order, it remains undisputed that the Settlement Class meets the predominance standard because common questions of fact and law predominate over individual damage issues.  All Class Members worked for Defendant in the same job position. All Class Members were subject to the same compensation practices, and all were classified by Defendant as exempt from the overtime requirements of the FLSA and IMWL.  The common issues regarding Defendant's compensation practices predominate over

11

any individual issues.  Moreover, Defendant's defenses to these cases are of class-wide application to the claims asserted.

Superiority:  No Class Member filed a Request for Exclusion from the Settlement.  Ex. 2, Springer Decl., at ¶ 10.  No Class Member has filed an objection to the Settlement.  *Id*. at ¶ 11. The number of Class Members participating in the Settlement, the absence of Class Members requesting exclusion from the Settlement Class, and the absence of objections to the Settlement, demonstrate that there is significant interest in the collective resolution of these claims. Litigating these cases in more than one forum would waste judicial resources and create the risk of conflicting outcomes.  As such, as this Court has already determined, maintaining the Litigation as a class action is superior to any alternate methods available.

By reason of the foregoing demonstration that the prerequisites for certification have been met, Plaintiffs request that the Court issue a final order certifying for settlement purposes the Settlement Class identified in the Parties' proposed final order.  *See* Proposed Final Approval Order, Ex. 1, ¶ 2.

## VI.  THE SERVICE AWARDS FOR CLASS REPRESENTATIVES AND CONSENT PLAINTIFFS ARE APPROPRIATE

Class Representatives Martha Peraza and Maura Gawin seek service payments for their contribution to this litigation and for the Consent Plaintiffs' contribution to this litigation.  In the motion for preliminary approval, Plaintiffs provided the Court with legal authorities supporting such service awards.  The Summary Notice mailed to Class Members informed Class Members that, subject to Court approval, the service payment for Class Representatives and Opt-In Plaintiffs would be paid out of the Settlement Fund.  Ex. 2, Springer Decl. ¶ 6, Attachment A. No member of the Settlement Class objected to the proposed service payments.  *Id.* at ¶ 11.

12

Class Representatives Peraza and Gawin invested significant time in bringing forward and prosecuting this case, assisting their counsel in the initial investigation, and attending two private mediation sessions. In short, the absent Class Members would have received nothing but for the effort and diligence of these two individuals. Accordingly, Plaintiffs request that the Court grant their request for service payments in the amount of seven thousand five hundred dollars ($7,500.00) each for Martha Peraza and Maura Gawin, as these payments are fair and reasonable. *See* Proposed Final Approval Order, Ex. 1, ¶ 7.

In addition, the Consent Plaintiffs who affirmatively opted into this case – Lenise Maxey, Selena Mussay, Theresa Froelich, Juan Cuarenta, Yesenia Serna-Vazquez, Eralba Duckollari, Danielle Mayfield, and Paul Yamauchi – provided a material service to the class. They provided valuable documents and information to Plaintiffs' Counsel that assisted the Class Representatives in recovering wages on behalf of all Class Members. Plaintiffs seek a service award of one thousand five hundred dollars ($1,500.00) for each Opt-In Plaintiff. *See* Proposed Final Approval Order, Ex. 1, ¶ 8.

## VII.  THE PAYMENT OF ATTORNEYS' FEES EQUAL TO ONE-THIRD OF THE SETTLEMENT FUND IS REASONABLE

As discussed in the Parties' Motion for Preliminary Approval, under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691-92 (7th Cir. 2007), *citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1988). Consequently, Class Counsel's request for one-third of the Settlement Fund as attorneys' fees should be approved, as it is adequately supported by the record.

13

*See* Proposed Final Approval Order, Ex. 1, ¶ 9.

> **A.    The Percentage of the Fund Method of Awarding Attorneys' Fees is Appropriate in Common Fund Cases**

The Seventh Circuit has directed district courts to employ the percentage of the fund method to determine an appropriate fee award in common fund cases.  *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005).  In fact, "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class."  *See Matter of Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572-74 (7th Cir. 1992), *later proceeding*, 985 F.2d 867 (7th Cir. 1993) (citing *Williams v. General Elec. Capital Auto Lease,* No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179, at *29-30 (N.D. Ill. Dec. 16, 1995)).  Indeed, the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n. 27 (N.D. Ill. 2011) (citing *Will v. General Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *3 (S.D. Ill. Nov. 22, 2010)).

In deciding fee levels in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" S*utton,* 504 F.3d at 692, 693-94, *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld*, 415 F.3d at 599.  Under the market-based approach, "class counsel are entitled to the fee they would have received had they handled a similar suit on a

14

contingent fee basis, with a similar outcome, for a paying client." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* No. 97 C 7694, 2001 U.S. Dist LEXIS 20397, at *10-11 (N.D. Ill. 2001).

Here, Class Counsel has executed a fee arrangement with Named Plaintiffs that entitled Class Counsel to one-third of any recovery. *See* Ex. 3, Werman Decl., ¶ 22. This percentage is consistent with the standard contingent fee percentage in this legal marketplace for comparable litigation. *See Teamsters Local Union No. 604 v. Inter-rail Transp., Inc.,* No. 02 C 1109-DRH, 2004 U.S. Dist. LEXIS 6363, at *3-4 (S.D. Ill. Mar. 19, 2004). Moreover, an award of one-third of a common fund is consistent with the practice of this District's application of the Seventh Circuit's market-based approach. *See Teamsters Local Union No. 604,* 2004 U.S. Dist. LEXIS 6363, at *3 ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon.").

### B. The Attorneys' Fee Request is a Reflection of the Relevant Market

#### 1. The Requested Attorneys' Fee Award Reflects the Normal Rate of Compensation in this Market

To determine what percentage of the fund should be awarded, the district courts also look to the market price for legal services in comparable litigation. *See Teamsters Local Union No. 604,* 2004 U.S. Dist. LEXIS 6363, at *3-4. In wage and hour litigation – like this case – fee awards of one-third are traditional in common fund cases. *Id.; Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill. ) (awarding one-third of $8,000,000 common fund in IPWCA vacation pay forfeiture class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) (awarding one-third of $2,500,000 common fund in IWPCA vacation pay forfeiture

class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill)

(awarding one-third of common fund in IMWL minimum wage and overtime pay case); *Perry v.*

*National City Bank*, Case No. 05 C 891 DRH, ECF No. 81 (S.D. Ill.) (awarding one-third of

$27,500,000 common fund in overtime case).[3]

  In addition, consistent with the market for Chicago legal services, Class Counsel

agreed to litigate this case on a one-third contingency fee basis, as evidenced by the initial

retainer agreement executed with the Named Plaintiffs. Ex. 3, Werman Decl., ¶ 22.   Class

Counsel took the risk that they would obtain no recovery at all.  *Id.* In fact, the contingency fee

agreement specifically provided that Class Counsel would receive nothing if they ultimately

failed to secure a monetary recovery for Plaintiffs.  *Id.*

  Finally, large wage and hour class actions are, by their very nature, complicated and

time-consuming.  Any lawyer undertaking representation of large numbers of employees must be

prepared to make a tremendous investment of time, energy and resources.  Due to the contingent

nature of the customary fee arrangement, lawyers must be prepared to make this investment with

the very real possibility of an unsuccessful outcome and no fee of any kind.  The demands and

---

[3]  See also the following cases from the Northern District of Illinois and the Chancery Court of the Circuit Court of Cook County:  *Acosta vs. Scott Labor,* N.D. Ill., Case No. 05 C 2518, ECF No. 120 (awarding 33 1/3% of common fund in overtime case); *Sanchez v. Stampede Meat, Inc.*, N.D. Ill., Case No 02 C 5452 (ECF No. 70) (awarding 33 1/3% of common fund in overtime case); *Gonzalez v. Labor Network*, Case No. 05 C 4864 (ECF No. 137) (awarding 33 1/3% of common fund in overtime case); *Flores v. Jorge Arteaga Corp*., N.D. Ill., Case No. 05 C 2057, ECF No. 53 (awarding one third of common fund in minimum wage and overtime case); *Kim v. CHT Corp.*, N.D. Ill., Case No. 03 C 7362, ECF No. 23 (awarding Plaintiffs' Counsel's requested 27.5% of common fund in minimum wage and overtime case); *Ortegon v. Staffing Network, Inc.*, Case No. 06 CH 12679, Order dated July 24, 2009, (awarding 33 1/3% of common fund in IDTLSA and overtime case); *Arrez v. Kelly Services, Inc*., Case No. 07 C 1289 (N.D. Ill.), ECF No. 177 (in IWPCA class action for owed wages, awarding requested 30% of $11,000,000 common fund); *Perezchica, vs. Eastco International Corp.,* Case No. 07 CH 04726, Order dated March 18, 2008 (awarding 33 1/3% of common fund in overtime case); *Polk v. Adecco*, Case No. Case No. 06 CH 13405, Order Dated November 15, 2010 (awarding requested 30% of $1,200,000 settlement fund).

risks of this type of litigation overwhelm the resources — and deter participation — of many traditional plaintiffs' firms. *See* Ex. 3, Werman Decl., ¶ 24. In addition, Plaintiffs could not have afforded to retain counsel on any basis other than a contingent fee basis. *Id.* at ¶ 22. Class Counsel was fully prepared to prosecute and finance this litigation for as long as necessary, with the very real possibility that they would come away with nothing. *Id.* at ¶¶ 22, 24. In light of Class Counsel's expertise, skill, and typical contingent fee arrangement, the requested percentage of the Settlement Fund is reasonable. *Id.* at ¶ 23.

> **2.      The Results and the Benefits Conferred Upon the Class Justify the Requested Award.**

This Settlement brings substantial value to the Named Plaintiffs and the Class. As described above, participating Settlement Class Members will receive the full estimated value of their owed overtime pay if they worked forty-five hours each week they were employed by Defendant, plus an equal amount in liquidated damages. The fact that significant monetary recovery is available to Class Members without the need to file claims, without the continued uncertainty of the pending dispositive motions and trial, and is reached through this Settlement, rather than after years of additional litigation, qualifies this Settlement as an exceptionally favorable result. Further, Class Members will not be required to sign general releases in order to participate in the Settlement. Thus, any claim a Class Member may have other than those asserted in this lawsuit remains unaffected. Ex. 3, Werman Decl., ¶ 25. The absence of a general release exemplifies the results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D. N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

In conclusion, based upon the negotiated fee agreement in this case, as compared to other

cases Class Counsel have litigated, the normal rate of compensation in similar cases, the risk

Class Counsel undertook in engaging in this litigation, the quality of legal services

rendered, the uncertainty of recovery and the results obtained, Class Counsel is entitled to a

reasonable attorneys' fees award of one-third of the Settlement Fund.

### C.      The Payment of Class Counsel's Costs and Expenses Is Appropriate

The Settlement provides that Class Counsel may apply to the Court for payment of costs

and expenses up to, but not exceeding, $10,000.  Class Counsel's incurred costs in this matter

totaling $5,371.02. Ex. 3, Werman Decl., ¶ 28.  Class Counsel's request of that amount from the

Settlement Fund as payment of costs and expenses is appropriate, as these costs and expenses

were necessarily incurred in order to litigate and settle this case. *Id.* Thus, reimbursement of

costs and expenses from the Settlement Fund is appropriate.

### VIII.   CONCLUSION

The Settlement is a compromise that takes into account the complex factual and legal

issues that confronted the litigants in this case.  It has been achieved in good faith and through

arm's length negotiations and is not the product of fraud or collusion.  The record establishes that

all the criteria under Rule 23 are met for purposes of settlement, and that the Parties have

provided the Class with adequate notice of the terms and conditions of the Settlement in a

manner intended to maximize the due process rights of the Class Members.

The Settlement replicates the relief available to the Settlement Class if Plaintiffs

prevailed at trial against Defendant on all issues.  However, should the Plaintiffs and the

Settlement Class continue this litigation they would face complex legal and factual issues,

significant defenses, substantial costs, and risk denial of class certification. The fact that no Class

Member requested exclusion from the Settlement, and no Class Member objected to the

Settlement, demonstrates strong support for the Settlement. Additionally, experienced Counsel for the Parties have extensively analyzed the claims and issues herein, and have certified that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class. Thus, the Court should grant final approval of the Settlement, certify the Settlement Class for settlement purposes, and enter the Parties' proposed final approval order.

Respectfully submitted,

Dated: March 5, 2013

s/Douglas M. Werman
One of Plaintiffs' Attorneys

Douglas M. Werman- dwerman@flsalaw.com
Maureen A. Salas –msalas@flsalaw.com
David E. Stevens- dstevens@flsalaw.com
Werman Law Office, P.C.
77 W. Washington, Suite 1402
Chicago, IL 60602
(312) 419-1008